JS - 6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN P. CHAVEZ, SR., an individual, | ) CASE NO. CV 12-07524 MMM (Ex) |
| Plaintiff, | ) |
| | ) ORDER GRANTING PLAINTIFF'S |
| vs. | ) MOTION TO REMAND |
| | ) |
| AMERIGAS PROPANE, INC., a corporation; JASON HUIE, an individual; and DOES 1-50, inclusive | ) |
| Defendants. | ) |

On July 20, 2012, John Chavez, Sr. filed this action against Amerigas Propane, Inc. and Jason Huie in Los Angeles Superior Court.[1] On August 31, 2012, defendants removed the action to this court.[2] Chavez filed a motion to remand on October 1, 2012, asserting that the court lacks subject matter jurisdiction.[3] Defendants oppose the motion.[4]

---

[1] Notice of Removal, Docket No. 1 (July 20, 2012).

[2] *Id*.

[3] Motion to Remand Case ("Motion"), Docket No. 9 (Oct. 1, 2012); Reply in Support of Motion to Remand Case ("Reply"), Docket No. 17 (Dec. 24, 2012).

[4] Opposition to Motion to Remand ("Opposition"), Docket No. 15 (Dec. 17, 2012).

Pursuant to Rule 78 of the Federal Rules of Civil Procedure and Local Rule 7-15, the court finds that the matter is appropriate for decision without oral argument. The hearing scheduled for January 7, 2013 is therefore vacated and taken off calendar

## I. BACKGROUND

Chavez was hired by Amerigas, a Pennsylvania corporation,[5] in 1984.[6] His duties included filling propane tanks for residential, commercial, and industrial customers, and driving a propane

---

[5] *Id.*, ¶ 5. The complaint does not allege Amerigas' principal place of business; in defendants' notice of removal, however, they state that Amerigas' principal place of business is in Pennsylvania. Amerigas proffers the declaration of Jean S. Konowalczyk, its senior counsel, who states that Amerigas' "nerve center" is in King of Prussia, Pennsylvania. (Declaration of Jean S. Konowalczyk ("Konowalczyk Decl."), Docket No. 15 (Dec. 17, 2012), ¶ 4). See *Hertz Corp. v. Friend*, __ U.S. __, 130 S.Ct. 1181, 1186 (2010).

Chavez objects to this paragraph of Konowalczyk's declaration, asserting that she lacks personal knowledge of the facts stated and that her statement thatof Amerigas' "nerve center" is in King of Prussia is an inadmissible legal conclusion. (Plaintiff's Evidentiary Objections ("Objections"), Docket No. 17 (Dec. 24, 2012) at 2). Konowalczyk states that she has personal knowledge of the facts contained in her declaration. (Konowalczyk Decl., ¶ 1.) Moreover, as senior counsel for Amerigas, it is reasonable to believe that she knows the location of the corporation's headquarters. See, e.g., *In re Kaypro*, 218 F.3d 1070, 1075 (9th Cir. 2001) ("Griesbach's five-year tenure as Arrow's credit manager lends support to his claim of 'personal knowledge' of industry practice"); *Barthelemy v. Air Line Pilots Ass'n*, 897 F.2d 999, 1018 (9th Cir. 1990) (concluding that a CEO's personal knowledge of various corporate activities could be presumed). Additionally, she has held various positions at both Amerigas and its parent corporation, UGI Corporation, and thus has a sufficient foundation for testifying as to where Amerigas' "nerve center" is located. (*Id.*, ¶ 1).

Nor is Konowalczyk's statement an inappropriate legal conclusion. She bases her statement that King of Prussia is the corporation's nerve center on the fact that King of Prussia is Amerigas' "center of direction, control, and coordination, and it is where the day-to-day management of the business is exercised;" additionally, the company's corporate officers are located at the King of Prussia headquarters. (Konowalczyk's Decl., ¶ 5). Such testimony is admissible to establish the citizenship of a corporation. See *Simonson v. Allstate Ins. Co.*, No. CV 12–4918 CAS (MANx), 2012 WL 3073918, *2 (C.D. Cal. July 27, 2012) (admitting the declaration of Allstate's assistant general counsel, which asserted that Allstate's "nerve center" was located where "the important corporate decisions are made, and where its executive and administrative functions are performed").

[6] Complaint, Docket No. 1 (Aug. 31, 2012), ¶ 12.

2

delivery truck.[7] On or about January 30, 2010, Chavez was injured in a non-work related accident.[8] Chavez notified his employer and went on medical leave beginning February 1, 2010.[9]

Almost one year later, in January, 2011, Chavez's doctor authorized him to return to work.[10] Chavez took a physical, as required by Amerigas and the Department of Transportation, and passed; he resumed his duties fully on February 1, 2011.[11] In mid-February, however, Chavez told his supervisors that his left leg was sore due to a year of inactivity. He requested a modification of his duties or additional time off to recuperate.[12]

Shortly thereafter, Huie, Chavez's supervisor,[13] told Chavez that Amerigas had given him the wrong physical prior to his return to full-time work.[14] He directed Chavez to undergo a second physical, which was significantly more strenuous than the first.[15] Among other things, Chavez was required to carry heavy weights up a set of stairs with no safety rail; he refused to perform this task, asserting that it was inherently dangerous.[16]

Chavez contends that the second physical he was given was more strenuous than those given other employees returning to work after an injury.[17] When Chavez complained to the head dispatcher at Amerigas's Gardena office about being required to undergo a second physical, the

---

[7]*Id.*, ¶ 13.

[8]*Id.*, ¶ 14.

[9]*Id.*, ¶ 15.

[10]*Id.*, ¶ 16.

[11]*Id.*, ¶¶ 16, 17.

[12]*Id.*, ¶ 19.

[13]*Id.*, ¶ 6.

[14]*Id.*, ¶ 20.

[15]*Id.*, ¶¶ 20, 21.

[16]*Id.*

[17]*Id.*, ¶ 24.

dispatcher responded that he "[did not] know" whether the second test was a set-up designed to result in Chavez's dismissal.[18] On April 11, 2011, Amerigas notified Chavez that he was being terminated for failing to pass the second fitness test.[19]

Chavez was allegedly replaced by a younger employee.[20] He asserts that during his tenure at Amerigas, Huie favored younger, Caucasian employees.[21] Chavez alleges that Amerigas violated the California Fair Employment and Housing Act ("FEHA") by engaging in age discrimination, retaliation, failing to make reasonable accommodation, failing to engage in the interactive process, and failing to take all steps necessary to prevent discrimination.[22] He also asserts that Amerigas violated the California Family Rights Act and wrongfully discharged him in violation of public policy.[23] Finally, Chavez asserts that both Amerigas and Huie are liable for intentional infliction of emotional distress.[24]

## II.  DISCUSSION

### A.   Legal Standards Governing Removal Jurisdiction

The right to remove a case to federal court is entirely a creature of statute. See *Libhart v. Santa Monica Dairy Co.*, 592 F.2d 1062, 1064 (9th Cir. 1979). The removal statute, 28 U.S.C. § 1441, allows defendants to remove when a case originally filed in state court involves a federal question or is between citizens of different states and has an amount in controversy that exceeds $75,000. See 28 U.S.C. §§ 1441(a), (b). Only state court actions that could originally have been

---

[18]*Id.*, ¶ 25.

[19]*Id.*, ¶ 26.

[20]*Id.*, ¶ 27.

[21]*Id.*, ¶ 28.

[22]*Id.* at 7.

[23]*Id.* at 13.

[24]*Id.* at 16.

filed in federal court can be removed. 28 U.S.C. § 1441(a) ("Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending"); see *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987); *Ethridge v. Harbor House Rest.*, 861 F.2d 1389, 1393 (9th Cir. 1988)

The Ninth Circuit "strictly construe[s] the removal statute against removal jurisdiction," and "[f]ederal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance." *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992) (citing *Boggs v. Lewis*, 863 F.2d 662, 663 (9th Cir. 1988), *Takeda v. Northwestern Nat'l Life Ins. Co.*, 765 F.2d 815, 818 (9th Cir. 1985), and *Libhart*, 592 F.2d at 1064). "The 'strong presumption' against removal jurisdiction means that the defendant always has the burden of establishing that removal is proper." *Id.* (citing *Nishimoto v. Federman-Bachrach & Assocs.*, 903 F.2d 709, 712 n. 3 (9th Cir. 1990), and *Emrich v. Touche Ross & Co.*, 846 F.2d 1190, 1195 (9th Cir. 1988)).

### B. Whether this Case Was Properly Removed under 28 U.S.C. § 1332

Defendants contend that the court has diversity jurisdiction to hear this action under 28 U.S.C. § 1332.[25] "[J]urisdiction founded on [diversity] requires that parties be in complete diversity and the amount in controversy exceed $75,000." *Matheson v. Progressive Specialty Ins. Co.*, 319 F.3d 1089, 1090 (9th Cir. 2003); see 28 U.S.C. § 1332(a)(1) ("The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States. . ."). Federal courts have jurisdiction only where there is complete diversity: the plaintiff's citizenship must be diverse from that of each named defendant. 28 U.S.C. §§ 1332(a)(1), 1332(c)(1); see *Caterpillar, Inc. v. Lewis*, 519 U.S. 61, 68 n. 3 (1996); see also *Cook v. AVI Casino Enters., Inc.*, No. 07-15088, 2008 WL 4890167, *3 (9th Cir. Nov. 14, 2008) (Unpub. Disp.) ("We have jurisdiction only if Cook, a resident of California, has citizenship

---

[25]Opposition at 4.

5

which is diverse from that of every defendant," citing *Lewis*, 519 U.S. at 68).

As noted, Chavez has sued his former employer, AmeriGas, and his former supervisor, Huie. If both Chavez and Huie are California citizens,[26] there is not complete diversity as required by § 1332. See *Matheson*, 319 F.3d at 1090. Defendants argue, however, that Huie was fraudulently joined to defeat diversity jurisdiction. The court examines this contention below.

### C.  Legal Standard Governing Fraudulent Joinder

"It is a commonplace that fraudulently joined defendants will not defeat removal on diversity grounds." *Ritchey v. Upjohn Drug Co.*, 139 F.3d 1313, 1318 (9th Cir. 1998) (citing *Emrich*, 846 F.2d at 1193 & n. 1; *McCabe v. General Foods Corp.*, 811 F.2d 1336, 1339 (9th Cir.1987)); see also *Burden v. General Dynamics Corp.*, 60 F.3d 213, 221-22 (5th Cir. 1995) (concluding that the district court had subject matter jurisdiction where a defendant charged with intentional infliction of emotional distress had been fraudulently joined). The joinder of a non-diverse defendant is considered fraudulent, and that party's citizenship may be disregarded, "[i]f the plaintiff fails to state a cause of action against the [non-diverse] defendant, and the failure is obvious according to the settled rules of the state. . . ." *Hamilton Materials, Inc. v. Dow Chemical Co.*, 494 F.3d 1203, 1206 (9th Cir. 2007) (quoting *McCabe*, 811 F.2d at 1339).

"Fraudulent joinder must be proven by clear and convincing evidence." *Hamilton Materials*, 494 F.3d at 1206 (citing *Pampillonia v. RJR Nabisco, Inc.*, 138 F.3d 459, 461 (2d Cir.

---

[26] Neither Chavez nor defendants allege Huie's citizenship. Chavez alleges only that Huie is a California resident. (Complaint, ¶ 6). There is a difference between citizenship and residency. See *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001). An allegation of residency is insufficient to establish whether there is diversity of citizenship for purposes of § 1332. *Baldwin v. Monier Lifetile, L.L.C.*, No. CIV05-1058PHXJAT, 2005 WL 3334344, *2 (D. Ariz. Dec. 7, 2005). While the fact that neither party alleges Huie's citizenship would normally mean that the court lacks subject matter jurisdiction, *Kanter*, 265 F.3d at 857-58, in this case defendants assert that Huie was fraudulently joined. As a result, the court must first determine whether Huie is a proper party before concluding that the lack of any allegation concerning his citizenship means the court is without jurisdiction.

The complaint likewise fails to allege Chavez's citizenship, asserting only that he resides in California. (Complaint, ¶ 4). It pleads, however, that Chavez worked at the Gardena, California Amerigas facility from 1984 until 2011, *id.*, ¶¶ 12, 16; it is likely, therefore, that he is a California citizen.

1998)). Because courts must resolve all doubts against removal, a court determining whether joinder is fraudulent "must resolve all material ambiguities in state law in plaintiff's favor." *Macey v. Allstate Property and Cas. Ins. Co.*, 220 F.Supp.2d 1116, 1117 (N.D. Cal. 2002) (citing *Good v. Prudential*, 5 F.Supp.2d 804, 807 (N.D. Cal.1998)). Thus, "[i]f there is a non-fanciful possibility that plaintiff can state a claim under [state] law against the non-diverse defendants[,] the court must remand." *Id.*; see also *Good*, 5 F.Supp.2d at 807 ("The defendant must demonstrate that there is no possibility that the plaintiff will be able to establish a cause of action in State court against the alleged sham defendant"). Given this standard, "[t]here is a presumption against finding fraudulent joinder, and defendants who assert that plaintiff has fraudulently joined a party carry a heavy burden of persuasion." *Plute v. Roadway Package Sys.*, Inc., 141 F.Supp.2d 1005, 1008 (N.D. Cal. 2001).

      The defendant "must have the opportunity to prove that individuals joined in the action cannot be liable on any theory." *Ritchey*, 139 F.3d at 1318; see also *McCabe*, 811 F.2d at 1339 (stating that the removing defendant is entitled to present facts showing that the joinder is fraudulent); *Campana v. American Home Products Corp.*, No. 1:99cv250 MMP, 2000 WL 35547714, *3 (N.D. Fla. Mar. 7, 2000) ("The removing party must show, with credible evidence, that there is no possibility that a plaintiff can state a cause of action against the nondiverse defendant"). "[F]raudulent joinder claims may be resolved by 'piercing the pleadings' and considering summary judgment-type evidence such as affidavits and deposition testimony." *Morris v. Princess Cruises, Inc.*, 236 F.3d 1061, 1068 (9th Cir. 2001) (quoting favorably the Fifth Circuit's decision in *Cavallini v. State Farm Mutual Auto Ins. Co.*, 44 F.3d 256, 263 (5th Cir. 1995) (citations omitted)); see also *West American Corp. v. Vaughan Basset Furniture*, 765 F.2d 932, 936 n. 6 (9th Cir. 1985) (stating that the court may consider affidavits, depositions, and other evidence); James W. M. Moore, Moore's Federal Practice § 102.21(5)(a) (3d ed. 2008) ("The federal court's review for fraud must be based on the plaintiff's pleadings at the time of removal, supplemented by any affidavits and deposition transcripts submitted by the parties").

**D. Whether There Is a "Non-Fanciful" Possibility That Chavez's Complaint States an Intentional Infliction of Emotional Distress Claim Against Huie**

The only cause of action alleged against Huie is a claim for intentional infliction of emotional distress ("IIED"). To determine whether Huie has been fraudulently joined, therefore, the court must evaluate whether defendants have shown by clear and convincing evidence that Chavez has failed to state such a claim and the failure is obvious under state law. A plaintiff pleading a claim for intentional infliction of emotional distress must allege (1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard for the probability of causing, emotional distress; (2) the fact that the plaintiff suffered severe or extreme emotional distress; and (3) the fact that the outrageous conduct actually and proximately caused the distress. *Conley v. Roman Catholic Archbishop of San Francisco*, 85 Cal.App.4th 1126, 1133 (2000) (citing *Cervantez v. J.C. Penney Co.*, 24 Cal.3d 579, 593 (1979) ("The elements of a prima facie case of intentional infliction of emotional distress consist of: (1) extreme and outrageous conduct by the defendant with the intent to cause, or reckless disregard for the probability of causing, emotional distress; (2) [the] suffering of severe or extreme emotional distress by plaintiff; and (3) [a finding that] plaintiff's emotional distress is actually and proximately the result of defendant's outrageous conduct"); *Wilkens v. National Broadcasting Co.*, 71 Cal.App.4th 1066, 1087 (1999) (same); *Symonds v. Mercury Savings and Loan Ass'n*, 225 Cal.App.3d 1458, 1468 (1990) (same). The defendant's conduct "must . . . be directed at the plaintiff or [take place] in the presence of the plaintiff." *Smith v. Pust*, 19 Cal.App.4th 263, 274 (1993). Generally, "conduct will be found to be actionable where the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'" *Cochran v. Cochran*, 65 Cal.App.4th 488, 494 (1998).

The complaint alleges that Huie knew or should have known that his conduct would cause Chavez to suffer emotional distress; that Huie acted with the intent of inflicting emotional distress; and that, as a result of Huie's actions, Chavez did in fact suffer emotional distress.[27] Defendants

---

[27]Complaint, ¶¶ 92, 94.

argue that the complaint does not allege sufficiently outrageous conduct by Huie to state an IIED claim. The only conduct Huie allegedly directed at Chavez was (1) ordering Chavez to submit to a second physical and (2) discriminating against older, non-Caucasian employees.[28]

"A simple pleading of personnel management activity is insufficient to support a claim of intentional infliction of emotional distress, even if improper motivation is alleged." *Janken v. GM Hughes Electronics*, 46 Cal.App.4th 55, 80 (1996). Personnel management activity includes "actions such as hiring and firing, job or project assignments, office or work station assignments, promotion or demotion, performance evaluations, the provision of support, the assignment or non-assignment of supervisory functions, deciding who will and who will not attend meetings, [and] deciding who will be laid off." *Id.* at 64-65. "[A] claim of intentional infliction of emotional distress [can be asserted, however,] '[w]here the behavior goes beyond the act of termination'" or other management activity. *Dagley v. Target Corp., Inc.*, No. CV 09-1330-VBF (AGRx), 2009 WL 910558, *3 (C.D. Cal. Mar. 31, 2009) (quoting *Gibson v. American Airlines*, No. C 96-1444 FMS, 1996 WL 329632, *4 (N.D. Cal. June 6, 1996)); see also *Graves v. Johnson Control World Services, Inc.*, No. C-05-1772 SC, 2006 WL 618796 *11 (N.D. Cal. Mar. 13, 2006) ("In response, Johnson Control argues that Graves cannot prevail on this cause of action because, as a matter of law, personnel management decisions are not 'outrageous conduct beyond the bounds of human decency.' . . . The court in *Janken* . . . note[d] that the remedy for personnel management decisions, even where improperly motivated, is 'a suit against the employer for discrimination.' . . . However, Defendant overstates the reach of the Court's decision in *Janken* to the extent that it argues that any decision affecting personnel management is not actionable under an intentional infliction of emotional distress theory, no matter what the motivation. . . . That proposition is far too broad for the *Janken* decision to bear, and, in fact, courts considering intentional infliction of emotional distress claims have clearly ruled that such claims can be brought where the 'distress is engendered by an employer's illegal discriminatory practices,'" citing *Accardi v. Superior Court*, 17 Cal.App.4th 341, 353 (1993), and *Hamilton v.*

---

[28]*Id.*, ¶¶ 20, 28

9

*Signature Flight Support Corp.*, No. C-05-409, 2005 WL 1514127, *7 (N.D. Cal. June 21, 2005)); *Rojo v. Kliger*, 52 Cal.3d 65, 81 (1990) (stating that an "employer's discriminatory actions may constitute . . . outrageous conduct under a theory of intentional infliction of emotional distress"); *Murray v. Oceanside Unified School Dist.*, 79 Cal.App.4th 1338, 1362 (2000) (stating, in a case involving discrimination based on sexual orientation, that "a claim for emotional and psychological damage, arising out of employment, is not barred where the distress is engendered by an employer's illegal discriminatory practices"); *Accardi*, 17 Cal.App.4th at 353 (permitting a claim for intentional infliction of emotional distress based on allegations of sex discrimination to go forward because the claim was "founded upon actions that are outside the normal part of the employment environment and violate this state's policy against sex discrimination"); *Fisher v. San Pedro Peninsula Hospital*, 214 Cal.App.3d 590, 618 (1990) ("Given an employee's fundamental, civil right to a discrimination free work environment . . . , by its very nature, sexual harassment in the work place is outrageous conduct as it exceeds all bounds of decency usually tolerated by a decent society [and will,] . . . if properly pled, . . . constitute the outrageous behavior element of a cause of action for intentional infliction of emotional distress against Dr. Tischler").

"Whether . . . alleged behavior is sufficiently extreme as to constitute 'outrageous' behavior is properly determined by the fact finder after trial or possibly after discovery upon a motion for summary judgment." *Angie M. v. Superior Court*, 37 Cal.App.4th 1217, 1226 (1995). Thus, in other cases in which defendants have argued that a supervisor's alleged conduct was not sufficiently outrageous to support an intentional infliction of emotional distress claim, district courts applying the fraudulent joinder standard have generally found a non-fanciful possibility of liability, even where plaintiff's claim appears "relatively weak." See *Asurmendi v. Tyco Electronics Corp.*, No. C 08-5699 JF (PVT), 2009 WL 650386, *5 (N.D. Cal. Mar. 11, 2009). District courts have also granted motions to remand where the complaint failed to allege outrageous conduct, because it was possible that plaintiff could cure the deficiency by amendment. See *Burris v. AT&T Wireless, Inc.*, No. C 06-02904 JSW, 2006 WL 2038040, *2 (N.D. Cal. July 19, 2006) ("Cingular does not argue that Burris cannot assert a tort claim for emotional distress against his former supervisor as a matter of law. Rather, Cingular argues that Burris failed to

state a claim for intentional infliction of emotional distress because he did not allege any extreme or outrageous conduct, a necessary element of this claim. . . . Although as currently ple[d], Burris has not alleged conduct which may be considered extreme or outrageous, Cingular has not demonstrated that, under California law, Burris would not be afforded leave to amend his complaint to cure this purported deficiency.  Accordingly, Cingular failed to demonstrate that it is obvious under settled state law that Burris cannot prevail against Mr. Caniglia and thus has not demonstrated that this Court has subject matter jurisdiction").

  The court cannot say that there is no possibility that the facts alleged by Chavez would be sufficient to support a finding of IIED against Huie, or that the relevant state law is so well settled that Chavez "would not be afforded leave to amend his complaint to cure [any] purported deficiency." *Burris*, 2006 WL 2038040 at *2.  The complaint alleges that before he directed Chavez to submit to the second, "inherently dangerous" physical, Huie knew of Chavez's leg injury; a jury could find that Huie knew walking up a flight of stairs with an injured leg and no safety rail while carrying weights was more likely to be dangerous for Chavez, and thus cause him to suffer anxiety and/or fear, than an ordinary individual.[29]  See *Hailey v. California Physicians' Service*, 158 Cal.App.4th 452, 473 (2007) ("The extreme and outrageous character of the conduct may arise from the actor's knowledge that the other is peculiarly susceptible to emotional distress, by reason of some physical or mental condition or peculiarity," quoting *McDaniel v. Gile*, 230 Cal.App.3d 363, 372 (1991)).

  Furthermore, the fact that other, similarly situated employees were not required to submit to the same type of strenuous screening test, and the fact that Huie allegedly discriminated against older, non-Caucasian employees, could lead a jury to infer that Huie deceptively required the test in order to effectuate Chavez's termination, and that he knew doing so was "substantially certain to result in severe emotional distress." *Dagley*, 2009 WL 910558 at *3.  Indeed, Chavez alleges

---

[29]*Id.*, ¶¶ 20, 24.  In a declaration attached to defendants' opposition, Huie states that he "was aware from others, and had observed on my own, the severe difficulty Mr. Chavez had getting around" after his injury. (Declaration of Jason Huie ("Huie Decl."), Docket No. 15 (Dec. 17, 2012), ¶ 4).

11

that the second physical was a "set up," and that Huie intended to use the results as a pretext to dismiss him due to his age and race.[30] In *Dagley*, plaintiff's supervisor terminated her while she was on medical leave. Plaintiff alleged an intentional infliction of emotional distress claim against the supervisor; her employer argued that the supervisor had been fraudulently joined. The district court disagreed, and remanded the action to state court. It noted plaintiff's allegation that the supervisor "either knew or should have known that terminating [Plaintiff] at the age of 63, in her time of need, while she was disabled and/or suffering from a medical condition . . . was substantially certain to result in severe emotional distress." *Id.* (alteration original). The court reasoned:

> "'[A] claim of intentional infliction of emotional distress is possible '[w]here the behavior goes beyond the act of termination. . . .' *Gibson* [ ], 1996 WL 329632, at *4 [ ]. For example, if a plaintiff 'alleges conduct other than that inherent in terminating an employee', such as violating a 'fundamental interest of the employee . . . in a deceptive manner that results in the plaintiff being denied rights granted to other employees,' then a claim for intentional infliction of emotional distress is possible against a supervisor. *Id.* In *Gibson*, the court found that such a claim was possible against plaintiff's supervisor when the supervisor fired plaintiff in part for taking medical leave. *Id.* The *Gibson* court stated that plaintiff was denied the right to medical leave in a deceptive manner when other employees were given such a right. *Id.* In this case, Plaintiff alleges that she was terminated during her medical leave without any inquiry or warning from Ms. Hernandez. It is possible that a reasonable jury could find that Ms. Hernandez denied Plaintiff's right to medical leave in a deceptive manner by terminating her, and that therefore Plaintiff may possibly have a claim of intentional infliction of emotional distress against Ms. Hernandez. Ms. Hernandez therefore is not a sham defendant." *Id.*

Here, similarly, it is possible that a jury could infer, based on the facts alleged, that Huie

---

[30]Complaint, ¶¶ 25-30.

12

deceptively ordered the second test and terminated Chavez for failing to complete it. While the test was ostensibly administered to evaluate Chavez's fitness for the job, a factfinder could determine that the test was unnecessarily strenuous or dangerous and that it was required to create a pretextual reason for terminating Chavez. In other cases where plaintiff based an intentional infliction of emotional distress claim on similar allegations of deceptive conduct, district courts have declined to find that supervisors were fraudulently joined. See e.g. *Asurmendi*, 2009 WL 650386 at *5 (holding that an allegation that a manager misrepresented that the purpose of plaintiff's meeting with another manager was to discuss molding rather than the employer's decision to terminate plaintiff "might be sufficient, in light of the totality of the circumstances, for a state court to find that [manager's] behavior was 'outrageous'"). See also *Webber v. Nike USA, Inc.*, No. 12–CV–00974 BEN (WVG), 2012 WL 4845549, *3 (S.D. Cal. Oct. 9, 2012) (concluding that plaintiff's supervisor was not fraudulently sued for IIED in part because the supervisor set "new sales goals that he understood to be unattainable" and terminated plaintiff for failing to meet them).

The cases cited by defendants – in which courts found supervisors had been fraudulently joined – are distinguishable. In *Kobos v. Schwan's Home Service, Inc.*, No. 1:09cv0856 LJO DLB, 2009 WL 2425399, *3-4 (E.D. Cal. Aug. 7, 2009), for example, the court found that plaintiff's complaint failed to state an IIED claim against a supervisor where "Plaintiff's Complaint contains only one factual allegation against Defendant Houselog; that is, 'Defendant HOUSELOG took items off of plaintiff's truck and blamed plaintiff for items missing.'" Although the plaintiff suggested that he could make additional allegations against the supervisor in his motion to remand, the court declined to "consider those allegations and [made] no determination as to whether or not they would be sufficient to state a claim against Houselog for intentional infliction of emotional distress." *Id*. at 4. It concluded that the sole allegation in the complaint did "not demonstrate extreme and outrageous conduct sufficient to state a cause of action for intentional infliction of emotional distress." *Id*.

Here, by contrast, Chavez has alleged facts showing that Huie knew the severity of Chavez's leg injury, and nonetheless ordered him to complete an overly strenuous and dangerous

13

test that no other employee had had to pass as a prerequisite to retaining his job. Chavez also alleges that Huie's conduct was intentionally designed to cause Chavez emotional distress. These individualized allegations, specifically linked to Chavez's termination from Amerigas, are more "outrageous" than the single allegation in *Kobos*.

Defendants maintain that the declaration Huie has submitted demonstrates that it is impossible for an IIED claim against him to succeed.[31] Huie states that he did not decide to require Chavez to take the second physical; rather, he asserts, the decision was made by Jean Tyrell, a registered nurse and a Workforce Health Consultant for Amerigas.[32] Huie's declaration, however, provides no details as to whether Huie had discretion to override the decision or direct that the test not be administered. Furthermore, the declaration does not address whether the second test was a standard test or whether it was designed specifically for Chavez. Huie, for example, does not contradict Chavez's allegation that no other similarly situated employee was

---

[31]Opposition at 17.

[32]Huie Decl., ¶¶ 5-8. Chavez objects to paragraphs 6-8 of Huie's declaration, which all concern a conversation between Huie and Tyrell, in which Tyrell purportedly informed Huie that Chavez had taken the wrong screening test and had to undergo a second evaluation. (Objections at 4-5). Chavez asserts that Huie lacks personal knowledge of the facts set forth in these paragraphs, that they contain inadmissible hearsay, and they contain inadmissible conclusions and opinions. (*Id.*) Huie's declaration states that he has personal knowledge of all of the facts set forth therein. (Huie Decl., ¶ 1.) Additionally, the declaration recounts a conversation in which Huie himself participated. It thus appears that Huie has personal knowledge of the facts set forth in paragraphs 6-8.
   Additionally, although the declaration concerns an out-of-court conversation, Tyrell's statements are not being offered for the truth of the matter asserted. Rather, they are being offered simply to show that Tyrell told Huie Chavez took the wrong test. Whether or not Tyrell's statement was truthful or accurate is not relevant in assessing whether Huie believed the second test was required, and thus whether he acted outrageously by ordering the second evaluation. Stated differently, Tyrell's statement is being offered not for its truth, but to demonstrate its effect on Huie. This is an appropriate use of an out-of-court statement.
   Finally, the declaration does not contain inappropriate legal conclusions or lay opinions. Although the declaration states that the second physical was the "correct test," this is not a legal conclusion; it appears rather to be a reference to Amerigas' corporate policies and Tyrell's conclusion that, pursuant to these policies, Chavez had not taken the correct test the first time. (Huie Decl., ¶ 7.)

14

required to take the second screening test.  Thus, even if all the averments in Huie's declaration are accurate, it is still possible that Huie ultimately made the decision to require Chavez to submit to an unduly strenuous screening test that Huie knew, based on Chavez's condition, Chavez would be unable pass.  For this reason, the court cannot say that it would be impossible for a jury to find Huie acted outrageously.[33]

Even if Huie's declaration makes it impossible for Chavez to prove that Huie's direction that Chavez take the second screening test constituted IIED, the declaration does not address Chavez's allegation that Huie discriminated against him due to his age and ethnicity in other ways. Chavez's IIED claim is based on more than Huie's purported direction that Chavez take a second physical.  Chavez alleges that Huie showed favoritism to younger, Caucasian employees throughout his tenure at Amerigas and failed to promote Chavez because of his ethnicity.[34]  Courts have generally found that IIED claims based on workplace discrimination are properly asserted against individual supervisors.  See e.g. *Barsell v. Urban Outfitters, Inc.*, No. 09-2604 MMM (RZx), 2009 WL 1916495, *4 (C.D.Cal. July 1, 2009) ("Because this claim [for IIED] is based on allegations of disability discrimination, there is a non-fanciful possibility" that plaintiff can state a claim against her supervisor); *Graves v. Johnson Control World Services, Inc.*, No. C-05-1772 SC, 2006 WL 618796 *11 (N.D. Cal. Mar. 13, 2006) ("[C]ourts considering intentional infliction of emotional distress claims have clearly ruled that such claims can be brought where the 'distress is engendered by an employer's illegal discriminatory practices'"); *Rojo*, 52 Cal.3d at 81 (stating

---

[33]Chavez asserts that the court should not consider Huie's declaration, because the propriety of removal is determined as of the time of removal, and Huie's declaration was submitted after the notice of removal was filed. (Reply at 18.)  The court, however, may consider affidavits submitted in opposition to a motion to remand even if they were not filed along with the notice of removal. See *West American Corp.*, 765 F.2d at 937 n. 6 (holding that although the defendant did not "submit a supporting affidavit when it removed the case to federal court . . . the district court had jurisdiction to entertain all arguments on the motion to remand concerning its jurisdiction," and therefore it was proper to consider an affidavit submitted in opposition to the motion).  Accordingly, the court will consider Huie's declaration in determining whether to remand the case.

[34]Complaint, ¶¶ 28, 29.

that an "employer's discriminatory actions may [also] constitute . . . outrageous conduct under a theory of intentional infliction of emotional distress"); *Murray v. Oceanside Unified School Dist.*, 79 Cal.App.4th 1338, 1362 (2000) (stating, in a case involving discrimination based on sexual orientation, that "a claim for emotional and psychological damage, arising out of employment, is not barred where the distress is engendered by an employer's illegal discriminatory practices"); *De Ruiz v. Courtyard Management Corp.*, No. C 06-03198 WHA, 2006 WL 2053505, *4 (N.D. Cal. July 21, 2006) ("[C]onduct contrary to the public policy . . . can support an IIED claim" against an individual supervisor). Chavez's allegations that Huie engaged in discriminatory conduct towards him, including allegations that Huie failed to promote him due to his age and race, are incorporated into his IIED claim.[35] To the extent that Chavez's IIED claim is predicated on Huie's purportedly illegal discriminatory practices, the court cannot conclude that it is obvious Chavez cannot state a claim against him even given Huie's declaration.

Ultimately, while defendants may ultimately prevail on what appears to be a relatively weak IIED claim, "such a consideration is of limited import for purposes of the instant motion, which requires Plaintiff to make even less of a showing than would be required on a motion to dismiss." *Asurmendi*, 2009 WL 650386 at *5. See also *Charles v. ADT Sec. Services*, No. CV 09-5025 PSG (AJWx), 2009 WL 5184454, *2 (C.D. Cal. Dec. 21, 2009) ("While these allegations may very well prove insufficient, the Court cannot, at this stage, conclude that Plaintiff has no possibility of recovery, especially when Plaintiff's termination is viewed in the context of his disability"). Accordingly, the court finds that defendants have not met their burden of showing by clear and convincing evidence that Chavez has no possibility of prevailing on the merits of his IIED claim against Huie. As a result, the court cannot find that Huie has been fraudulently joined.[36]

---

[35] *Id.*, ¶ 91.

[36] As the court has concluded that Huie was not fraudulently joined and thus complete diversity does not exist, it need not address Chavez's arguments that defendants have failed to prove that the amount in controversy requirement is satisfied and failed to prove that Amerigas is not a California citizen. The court notes, however, that based on affidavits submitted by

## III. CONCLUSION

For the reasons stated, the court finds that Huie has not been fraudulently joined. Because defendants have failed to demonstrate that Huie's citizenship is diverse from Chavez's, and because it appears likely that both are California citiznes, the court lacks subject matter jurisdiction to hear the action.[37] Chavez's motion to remand is therefore granted, and the clerk is directed to remand the action to Los Angeles Superior Court forthwith.

DATED: January 2, 2013

_____
MARGARET M. MORROW
UNITED STATES DISTRICT JUDGE

---

defendants in support of their opposition to Chavez's motion to remand, it appears that the minimum amount in controversy requirement is satisfied and that Amerigas is only a Pennsylvania citizen. (See Konowalczyk Decl., ¶¶ 4-11, Exh. A).

[37]As noted, neither the complaint nor the notice of removal allege Huie's citizenship. Based on Huie's declaration, however, it appears that he has worked at the Gardena, California Amerigas facility for at least the past six years. (Huie Decl., ¶¶ 1, 2). It thus appears likely that Huie is a California citizen and complete diversity is lacking.